UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____ )
BRYAN KEITH DIXON,                )
                                  )
          Plaintiff,              )
     v.                           )    C.A. No. 17-77 WES
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of Social Security,  )
                                  )
          Defendant.              )
_____ )

**ORDER**

WILLIAM E. SMITH, Chief Judge.

In a Report and Recommendation ("R&R") filed on February 23, 2018 (ECF No. 13), Magistrate Judge Patricia A. Sullivan recommended that Plaintiff's Motion To Reverse the Decision of the Commissioner ("Motion To Reverse") (ECF No. 11) be denied and that Defendant's Motion for an Order Affirming the Decision of the Commissioner ("Motion To Affirm") (ECF No. 12) be granted. After carefully reviewing the R&R and the relevant papers, and having heard no objections, the Court ACCEPTS the R&R in its entirety and adopts the recommendations and reasoning outlined therein.

The Court therefore GRANTS Defendant's Motion To Affirm (ECF No. 12) and DENIES Plaintiff's Motion To Reverse (ECF No. 11).

IT IS SO ORDERED.

_William E. Smith_

William E. Smith
Chief Judge
Date:  March 21, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BRYAN KEITH DIXON,                           :
         Plaintiff,                         :
                           :
         v.                                 :    C.A. No. 17-77WES
                           :
NANCY A. BERRYHILL, ACTING                    :
COMMISSIONER OF SOCIAL SECURITY,              :
         Defendant.                         :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

A "younger person" of thirty at the time of his administrative hearing, Plaintiff Bryan Keith Dixon alleges that he is disabled due to bipolar disorder and attention deficit hyperactivity disorder ("ADHD"), among other impairments. In his motion to reverse the Commissioner's decision denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"), Plaintiff claims that the Administrative Law Judge ("ALJ") erred in failing to include a limitation based on the alleged need to work in "some form of structured programming," as reflected in the explanation provided by the non-examining expert psychologist for his initial-level mental review. Plaintiff also claims that the ALJ erred in failing to include a limitation based on the statement that "he may wish to complete one task before moving on to the next," as reflected in a neuropsychological report prepared during a 2014 psychiatric hospitalization. In addition, Plaintiff disputes the limited weight afforded to the opinions of a therapist he saw at the Kent Center. Because of these errors, Plaintiff contends that

the ALJ's residual functional capacity[1] findings are not supported by substantial evidence. Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Having reviewed the entire record, I find no error.  Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be GRANTED.

## I.    **Background**[2]

During childhood, Plaintiff received special education, was repeatedly arrested for assault and for breaking into cars, abused cocaine and alcohol, and was diagnosed with schizoaffective disorder, ADHD and depression.  Tr. 514, 525, 640.  After completing high school, Plaintiff was criminally charged (ten arrests) with such offenses as disorderly conduct, burglary and cocaine distribution.  Tr. 555, 724.  He used drugs including "cocaine, benzoes, all types, opioids, heroin, hallucinogens, marijuana, ecstasy, and bath salts."  Tr. 587.  Plaintiff's work history was sporadic, reflecting jobs, for example in 2011, as a dishwasher, which lasted for no more than five to seven months.  Tr. 45, 278-85.  The most he ever earned in a single year was when he worked as a dishwasher in 2011; his reported income was $8885.  Tr. 207.  His first disability application was filed in 2003 and denied on reconsideration.  Tr. 237.  No material from that application is in the record.  Id.

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2] Because Plaintiff has placed in issue only his mental impairments, only they are discussed in this report and recommendation.

On October 20, 2011, Plaintiff was tazed by New Hampshire police after a chase that was precipitated by his attempt to break into a car while he was high on bath salts; during this incident, he fell and hit his head.  Tr. 331, 361.  He was hospitalized first at Wentworth-Douglas Hospital and then at Massachusetts General Hospital ("MGH") because of a very serious head injury; he had surgery to address a brain hemorrhage and remained at MGH until November 16, 2011.  Tr. 375.  The record reflects that he appeared to have made a good recovery in that, by November 9, 2011, he was responding "very well to Psych services," and was able to follow three-step commands, although his concentration was limited.  Tr. 409.  A mental status examination performed on November 15, 2011, was largely normal although he was occasionally sad, with constricted affect, and, while not depressed, he said his mood was "terrible" "b/c i am missing a person."  Tr. 407 (doing well, with no agitation/behavioral outbursts).  Treating staff concluded that he displayed agitation deemed "2/2 to brain injury superimposed on an individual who is impulsive and socially deviant at baseline."  Id.

After he was discharged from MGH, Plaintiff returned to Rhode Island and initiated a primary care treating relationship at Primary Medical Group in November 2011.  Tr. 506.  Within a month of discharge, he also filed his second disability application alleging onset in January 2010.  Tr. 215.  The second application file contains a consultative examination report from a psychologist, who found him capable of functioning in the low average range with moderate depression, mild-to-moderate anxiety and "attention/concentration spans varied," Tr. 518, as well as from a neurologist, who found hearing loss and tinnitus, mild gait imbalance and brief positional vertigo from the head injury.  Tr. 522.  The claim was denied initially in April 2012, Tr. 71, and Plaintiff did not pursue it.  After a hiatus without treatment from December 2011 through September 2012, in October, Plaintiff resumed treatment with Dr. Anna Filip, a

family practitioner at Thundermist, at the suggestion of his attorney.  Tr. 564-70.  She prescribed

medication to treat depression and ADHD.  Tr. 571.  By December 5, 2012, her examination

reflects largely normal mental findings, including "able to sit still during visit, able to use full

sentences and can complete full thoughts . . . much improved since starting Adderall."  Tr. 564.

From January 2013 until June 2014, Plaintiff was in jail in New Hampshire.  Tr. 28.

Based on statements reflecting psychosis (e.g., "I am the son of God"; "I was Batman and

became the Joker"), Plaintiff was found incompetent to stand trial[3] and sent to New Hampshire

Hospital for a competency/restoration evaluation.  Tr. 525-26.  There a neuropsychological

assessment was performed by Drs. Laura Flashman and Megan Baldasarre ("Flashman/

Baldasarre report").  Tr. 615-20.  Their testing resulted in findings of "low average intellectual

abilities," with relatively intact performance on such skills as memory and basic attention.  Tr.

619.  They opined that he appears to have "mild subcortical systems dysfunction," potentially

attributable to "recent head injury" as well as to his "history of ADHD, bipolar illness and

polysubstance abuse."  Tr. 620.  In its recommendations, the report suggests, "he may wish to

complete one task before moving on to the next, as he may have a harder time when he is trying

to multi-task or manage multiple projects at one time."  Id.  The New Hampshire Hospital

discharge notes dated July 16, 2014, include the observation that, despite the refusal to accept

recommended psychiatric medications, during "the entire admission here," "he was in excellent

behavioral control" and that, at discharge, he was "in stable condition."  Tr. 614.  The discharge

summary reflects the conclusion of the treating staff that the Flashman/Baldasarre report showed

that "he was generally intact."  Tr. 613.

---

[3] The record does not reveal the evidentiary foundation for this finding.  Treating staff at the jail speculated that he
might be psychotic due to cocaine withdrawal, which can last for months or years.  Tr. 525.

In July 2014, Plaintiff was released by New Hampshire on probation back to Rhode Island; he resumed care with Dr. Filip at Thundermist.  Tr. 559.  Two weeks later, he filed the pending disability applications, resulting in a prompt file review by expert psychologist Dr. John Warren.  Tr. 86-96, 97-107.  Meanwhile, Dr. Filip sent him for a medication evaluation to a psychiatric nurse specialist, Nancy Shea.  Nurse Shea's August 27, 2014, mental status observations were entirely normal, including focused attention, euthymic mood and appropriate affect.  Tr. 555.  Opining soon afterwards, Dr. Warren explained his Step Two and Step Three findings: "when sober and involved in some form of structured programming, claimant retains the capacity to perform basic tasks and relate with others well enough for routine workplace purposes."  Tr. 91, 102.  Dr. Warren opined to an RFC that reflected Plaintiff's ability to perform simple routine, repetitive tasks and instructions, with moderate attentional, social and adaptational limitations.  Tr. 91-94, 102-04.  Based, *inter alia*, on Dr. Warren's opinion, the claims were denied initially on September 29, 2014.  Tr. 19.

In October 2014, Plaintiff initiated mental health treatment at the Kent Center with a therapist, Ms. Stacie Barden, LCSW, and a psychiatrist, Dr. Liliya Koyfman.  During intake with Ms. Barden, Plaintiff stated that, "he thinks that therapy and psychiatry will help him be approved [for SSDI] so 'I can collect a check and live off the government,'" as well as (falsely, as far as the MGH record reveals) that he was "in a coma for 19 days"; Ms. Barden recorded her observation of psychosis and his reports of delusions.  Tr. 610.  According to the record, Plaintiff never saw Ms. Barden again.[4]  During Dr. Koyfman's initial psychiatric evaluation in December 2014, Plaintiff told her that he was anxious about money, having been denied disability:

---

[4] See n.9 *infra*.

"Between lawsuit[5] and disability, I need some kind of money and then I can look for a job."  Tr.

725.  On examination, Dr. Koyfman found decreased concentration, with Plaintiff focusing only

on his desire for a prescription for Adderall, depressed mood, but appropriate affect and thoughts

and no psychosis or suicidal/homicidal ideation.  Tr. 726.  In January 15, 2015, based, *inter alia*,

on an assessment performed by expert psychologist, Dr. Stephen Clifford, Plaintiff's disability

applications were denied on reconsideration.  Tr. 110-31.  Dr. Clifford affirmed Dr. Warren's

Step Two/Step Three explanation, and opined to the same RFC.  Id.

Following the second denial, Plaintiff continued to see Dr. Filip and Dr. Koyfman.  At a

June 2015 appointment with Dr. Koyfman, on examination, she noted appropriate affect, normal

concentration and impulse control, with no delusions or hallucinations; the only findings of any

significance are "dysphoric" mood and "spontaneous" speech.  Tr. 686-87.  By August 2015, Dr.

Filip's mental status evaluation was essentially normal.  Tr. 658.  Dr. Koyfman sometimes

reported irritated mood and impaired impulse control and concentration, for example at the

appointment just before his ALJ hearing.  Tr. 728.

After reconsideration, but before the ALJ's hearing, in March and December 2015, Ms.

Barden submitted two substantially similar mental RFC assessments; both opine to Plaintiff's

inability to attend for extended periods, to perform activities on a schedule or sustain an ordinary

routine, as well as to marked social impairments.  Tr. 643-45, 696-97.  Ms. Barden concludes

that, "it is not likely that [Plaintiff] would be capable of engaging in any substantial gainful

employment."  Tr. 642.

In his decision, the ALJ accepted as severe impairments substance addiction disorder,

personality disorder, anxiety and ADHD.  Tr. 22.  Affording "great weight" to the non-examining

---

[5] Plaintiff sued the New Hampshire police in connection with the October 2011 head injury.  Tr. 724.

expert psychologists (Drs. Warren and Clifford)[6] and "little weight" to the therapist, Ms. Barden, he

found that Plaintiff's RFC permitted him to perform simple, routine, repetitive work with social

limitations.  Tr. 29-30.  In reliance on the testimony of a vocational expert, the ALJ found that

Plaintiff could perform his prior work as a dishwasher, as well as office cleaner, both of which

require educational development Reasoning Level 2, and price marker, which can be done by an

individual limited to Reasoning Level 1.  Accordingly, the ALJ concluded that Plaintiff was not

disabled.  Tr. 33.  This case followed.

## II.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v.

Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v.

Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F.

Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by

substantial evidence, the Commissioner must be affirmed, even if the Court would have reached

a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819

F.2d 1, 3 (1st Cir. 1987) (per curiam); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th

Cir. 1991) (per curiam); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir.

1981).

---

[6] The ALJ also gave great weight to the non-examining psychologist who opined in connection with the second
application that was denied in 2012.  This psychologist concluded that Plaintiff had RFC limitations similar to those
found by Drs. Warren and Clifford after considering a record that includes a time period overlapping with the period
in issue in this case.  Tr. 29.

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

## III.   **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.   **Five-Step Analytical Framework**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. §

404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's

impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. §

404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past

work) prevent doing other work that exists in the local or national economy, a finding of disabled

is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at

Steps One through Four, but the Commissioner bears the burden at Step Five.  Wells v. Barnhart,

267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI

claims).  That is, once the ALJ finds that a claimant cannot return to the prior work, the burden

of proof shifts to the Commissioner to establish that the claimant could perform other work that

exists in the local or national economy.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  To

meet this burden, the ALJ must develop a full record regarding the vocational opportunities

available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

**B.      Treating Physicians and Other Sources**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F.

Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c).  If a treating

physician's opinion on the nature and severity of a claimant's impairments is well-supported by

medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with

the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v.

Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2).  The ALJ may discount a treating physician's opinion or report

regarding an inability to work if it is unsupported by objective medical evidence or is wholly

conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir.

1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the

determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12

(D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded

treating source opinion, court will not speculate and try to glean from the record; remand so that

ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must

nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and

the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical

evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in

the medical conditions at issue; and (6) other factors which tend to support or contradict the

opinion.  20 C.F.R §§ 404.1527(c), 416.927(c).  A treating physician's opinion is generally

entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).  If a treating source is not accorded controlling weight, the ALJ must apply the

factors listed in 20 C.F.R. § 404.1527(c) for DIB claims or 20 C.F.R. § 416.9279(c) for SSI

claims.  As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the
> weight given to the treating source's medical opinion, supported by the evidence
> in the case record, and must be sufficiently specific to make clear to any
> subsequent reviewers the weight the adjudicator gave to the treating source's
> medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996).  The regulations confirm that, "[w]e will always

give good reasons in our notice of determination or decision for the weight we give your treating

source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, where a treating

physician has merely made conclusory statements, the ALJ may afford them such weight as is

supported by clinical or laboratory findings and other consistent evidence of a claimant's

impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

A treating source who is not a licensed physician or psychologist is not an "acceptable

medical source."  20 C.F.R. §§ 404.1513, 416.913; SSR 06-03p, 2006 WL 2263437, at *2 (Aug.

9, 2006).  Only an acceptable medical source may provide a medical opinion entitled to

controlling weight to establish the existence of a medically determinable impairment.  SSR 06-

03p, 2006 WL 2263437, at *2.  An "other source," such as a nurse practitioner or licensed

clinical social worker, is not an "acceptable medical source," and cannot establish the existence

of a medically determinable impairment, though such a source may provide insight into the

severity of an impairment, including its impact on the individual's ability to function.  SSR 06-

03p, 2006 WL 2263437, at *2-3.  In general, an opinion from an "other source" is not entitled to

the same deference as an opinion from a treating physician or psychologist.  Id. at *5.

Nevertheless, the opinions of medical sources who are not "acceptable medical sources" are

important and should be evaluated on key issues such as severity and functional effects, along

with other relevant evidence in the file.  Id. at *4.

The ALJ is required to review all of the medical findings and other evidence that support

a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

making the ultimate determination about whether a claimant meets the statutory definition of

disability.  20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ is not required to give any special

significance to the status of a physician as treating or non-treating in weighing an opinion on

whether the claimant meets a listed impairment, a claimant's residual functional capacity

("RFC"), see 20 C.F.R. §§ 404.1545-46, 416.945-46, or the application of vocational factors

because that ultimate determination is the province of the Commissioner.  20 C.F.R. §§

404.1527(d), 416.927(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794

(1st Cir. 1987) (per curiam).

## IV.  Analysis

### A.    Limitations Based on Structure and One-Task-at-a-Time Reasoning

Plaintiff asks the Court to focus on two sentences in the opinions of two sources.  First,

he highlights a sentence in the Step Two/Three explanation by the non-examining expert

psychologist, Dr. Warren, which was affirmed by the non-examining psychologist at the

reconsideration phase, Dr. Clifford.  The sentence is as follows:

> Overall, a rather chronic clinical picture indicating that when sober and involved
> in **some form of structured programing**, claimant retains the capacity to
> perform basic tasks and relate with others well enough for routine workplace
> purposes.

Tr. 91, 102, 115, 126 (emphasis added).  Plaintiff argues that this sentence must be interpreted as

cabining Dr. Warren's RFC, meaning that Dr. Warren really opined that Plaintiff can perform

simple tasks only in a structured setting, which is inconsistent with the ability to engage in

substantial gainful activity.  Second, Plaintiff points to the Flashman/Baldasarre report, which

states:

> [H]e may wish to complete **one task before moving on to the next**, as he may
> have a harder time when he is trying to multi-task or manage multiple projects at
> one time.

Tr. 620 (emphasis added).  Plaintiff asks the Court to interpret this Flashman/Baldasarre

suggestion as a functional limitation to performing one task at a time, which he asks the Court to

find amounts to an RFC that precludes "simple, repetitive work" at jobs that require Reasoning

Levels 1 or 2.

12

Both arguments fail for the same reason.  The non-examining expert psychologists opined to function-by-function limitations, comprising Plaintiff's RFC.  All of the medical information that informed Dr. Warren's comment about "structured programming" was also considered and incorporated into his RFC opinion.[7]  Dr. Warren could have opined to a more limited RFC by adding the need to work in a "highly structured setting," but he did not.  See Lyons v. Colvin, No. 7:13-CV-00614, 2014 WL 4826789, at *10 (N.D.N.Y. Sept. 29, 2014) (inability to function outside a highly structured setting requires remand for further consideration).  Dr. Clifford reviewed the same records (and more), noted Dr. Warren's observation about "structured programming," and affirmed both it and Dr. Warren's RFC findings "as written."  Tr. 115, 126, 118, 129.  Like Dr. Warren, Dr. Clifford did not include an RFC limitation to work only in a "highly structured setting."  Similarly, Dr. Warren's file review specifically referenced the records from New Hampshire Hospital, which included the Flashman/Baldasarre report (as well as the Hospital discharge summary that interpreted the Flashman/Baldasarre report as showing that "he was generally intact").[8]  Tr. 613.  Deploying his

---

[7] Plaintiff's argument about the need for structure also fails because, as the Commissioner correctly points out, Plaintiff misinterprets Dr. Warren's reference to "structured programming" by converting its meaning into a reference to work in a "structured setting."  Rather, it seems clear that Dr. Warren's words meant what he wrote – that Plaintiff can perform simple work when he is sober and getting treatment, to include "structured programming," such as outpatient psychiatric care.  This interpretation of the phrase "structured programming" is consistent with its use in the case law.  See, e.g. Pelletier v. Colvin, No. 13-651, 2015 WL 247711, at *4 n.3 (D.R.I. Jan. 20, 2015) ("Partial hospitalization is a structured program of outpatient psychiatric treatment provided as an alternative to inpatient psychiatric care.") (citation omitted); Kosiski v. Frakes, No. 16-345, 2017 WL 401826, at *3 (D. Neb. Jan. 30, 2017) (sex offender treatment as an example of "structured programming"); Barber v. Hartley, No. 10-484, 2010 WL 3463794, at *7 (E.D. Cal. Sept. 1, 2010) (Alcoholics Anonymous as an example of "structured programming").

[8] Plaintiff's reliance on the Flashman/Baldasarre report also is unavailing because the quoted sentence is clearly a suggestion, not a functional limitation.  See Mills v. Apfel, 84 F. Supp. 2d 146, 149 n.6 (D. Me. 2000) ("Although Dr. Doane concedes that Mills *may* have difficulties standing for an extended period or walking without stopping, he never concludes that these are significant limitations") (emphasis in original).  In any event, as Plaintiff's brief concedes, ECF No. 11 at 17, the argument does not make sense: Reasoning Level 1 requires commonsense understanding to carry out simple one **or** two step instructions, while the vocational expert testified that Plaintiff could work as a cleaner, which requires only Reasoning Level 1.  See Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005) ("reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required").  Thus, even if Flashman/Baldasarre intended

expertise in psychology, Dr. Warren interpreted the New Hampshire Hospital findings, along

with the rest of the record, and converted them into his function-by-function RFC; he did not

include a reasoning limitation restricting Plaintiff to the ability to do only one task at a time.  Dr.

Clifford reviewed the same records (and more) and reached the same opinion.

I find no error in the ALJ's reliance on the Warren/Clifford RFC conclusions and do not

recommend remand based on these arguments.  Bianco v. Astrue, No. 09-021, 2010 WL

2382855, at *12 (D.R.I. Apr. 20, 2010).

### B.      Barden Opinions

The ALJ's decision states that, "[l]ittle evidentiary weight is given to the mental residual

functional capacity offered by one of the claimant's treating therapist, Stacey Barden, LCSW."

Tr. 30.  As a reason, the ALJ concluded:

> While Ms. Barden's determinations are valuable given her treatment history with
> the claimant, the extent of her opinions are not consistent with the medical
> evidence of record when viewed in its entirety."

Tr. 30 (citing records from Thundermist and Kent Center).  Plaintiff contends that this case must

be remanded because the ALJ erred in not affording controlling weight or, at least, great weight

to the Barden opinions.  As grounds, he asks the Court to consider Dr. Koyfman's mental status

examination findings, which often include the observations of impaired impulse control, insight

and judgment, as well as occasionally impaired memory.  He also asks the Court to credit his

own statements, all of which he claims are consistent with and supportive of the Barden

opinions.

There are serious problems with this argument.  For starters, Ms. Barden is a non-

acceptable medical source.  See Alcantara v. Astrue, 257 F. App'x 333, 334-35 (1st Cir. 2007).

---

their suggestion as an RFC limitation, it would appear that an individual who performs better by doing one task at a
time could still perform at least one of the jobs on which the ALJ relied.

Thus, Plaintiff's argument that her opinions are entitled to the controlling weight potentially

available to a treating physician or psychologist pursuant to SSR 96-2p(6) is simply unavailing.

SSR 06-03p.  Rather, at best, the opinion of a therapist like Ms. Barden may be used to provide

"evidence about the severity and effects of impairment, as well as a general source of evidence."

Alcantara, 257 F. App'x at 334-35.  Further, while the ALJ assumed that Ms. Barden had a

treating relationship with Plaintiff, the record reflects only a single encounter, making it

impossible to ascertain the frequency with which he was seen or the "kinds and extent of

examination and testing" Ms. Barden performed, if any.[9]  20 C.F.R. § 404.1527(c)(2)(i-ii), (f)(1)

(more weight is to be afforded to non-acceptable treating source with longer relationship and

more frequent examinations, as well as based on "kinds and extent of examinations and testing"

performed); see Cookson v. Colvin, 111 F. Supp. 3d 142, 152 (D.R.I. 2015) (opinion properly

afforded minimal weight because source only met with claimant once and record contained no

contemporaneous mental health notes to provide context to opinions).  Most importantly, the

applicable regulations provide that "the more consistent a medical opinion is with the record as a

whole," the more weight it may be given; thus, the ALJ's stated basis for discounting the Barden

opinions – their inconsistency with the Thundermist and Kent Center records – is well grounded

in the law.  20 C.F.R. § 404.1527(c)(4), (f)(1).  Further, the consistency between the Barden

---

[9] Ms. Barden's December 14, 2015, opinion seems to describe a treating relationship of six-months duration as of the date of her March 2015 opinion, in that she wrote: "Began treatment 9/25/14.  Biweekly sessions."  Tr. 694. Plaintiff's vague answer during the hearing seems to confirm the existence of a treating relationship.  Tr. 47 ("her name's Stacy . . . She's my therapist.  She helped me a lot with what I should do –").  However, the Kent Center's records contradict Ms. Barden's opinion in that they do not reflect that she began treating Plaintiff on September 25, 2014; to the contrary, the first (and only) encounter with Ms. Barden is on October 16, 2014.  Tr. 610.  Further, Ms. Barden's October 16, 2014, note specifically states that it is the "1st appt," Tr. 610, contrary to Ms. Barden's assertion in her opinion that she had seen Plaintiff three weeks prior, on "9/25/14."  Despite this confusion, the ALJ gave Plaintiff the benefit of the doubt and viewed the Barden opinions as from a treating source, finding them to include "determinations [that] are valuable given her treatment history."  Tr. 30.  See Costa v. Colvin, No. 15-540, 2016 WL 7974120, at *4 (D.R.I. Dec. 21, 2016), adopted, 2017 WL 354284 (D.R.I. Jan. 24, 2017) ("opinions from sources who are not 'acceptable medical sources' are important and should be evaluated on key issues such as severity and functional effects, along with other relevant evidence in the file").

opinions and Plaintiff's statements does not undermine the ALJ's decision to afford the Barden

opinions little weight because Plaintiff has not challenged the ALJ's well-founded determination

to discount the credibility of those statements.  Finally, Plaintiff is simply wrong in arguing that

the ALJ chose to disregard the Barden opinions.  To the contrary, both are expressly referenced

in the decision.  The March 2015 opinion is cited as one of the sources used to formulate the ALJ

Step Three analysis of Plaintiff's difficulties with "concentration, persistence or pace."  Tr. 23.

And the Barden conclusions regarding Plaintiff's "mental residual functional capacity"[10] are

expressly discussed in connection with the ALJ's RFC analysis, which notes that her

determinations are "valuable given her treatment history," but affords them little (but not no)

weight in light of their inconsistency with the "entirety" of the other medical evidence.  Tr. 30.

At bottom, Plaintiff argues only that the record contains some evidence that is consistent

with the Barden opinions.  He does not challenge the ALJ's well-supported finding that there is

also inconsistent evidence or the ALJ's weighing of the evidence resulting in the pivotal finding

of inconsistency when the record is "viewed in its entirety."  Tr. 30.  Nor could he, with the mental

status examinations from the Kent Center a mix of normal and abnormal observations, while

several from Thundermist are completely normal.  See, e.g., Tr. 555 (mental status observations

of Nurse Shea of Thundermist entirely normal, including focused attention, euthymic mood and

appropriate affect); Tr. 658 (mental status examination of Dr. Filip of Thundermist largely

normal); Tr. 686 (mental status observations of Dr. Koyfman normal except for dysphoric mood).

While Plaintiff may be right that some of the observations of his treating sources are consistent

---

[10] The Court declines to chase the red herring based on the ALJ's inclusion of a citation to the December 2015 Barden opinion "(See 16F)", but omission of the analogous citation to the March 2015 Barden opinion, in his discussion of the weight to be afforded to "the mental residual function capacity offered by one of the claimant's treating therapist, Stacie Barden, LCSW." Tr. 30.  It is plain from the words used in the decision that the ALJ is referring to both the March and December opinions, in that both amount to Ms. Barden's opinion regarding Plaintiff's mental residual functional capacity.

with the Barden opinions, while many are not, that is not enough to require remand.  As the

adjudicator, the ALJ is permitted to thread through the record to conclude that, "viewed in its

entirety," it is sufficiently inconsistent with Ms. Barden's extreme and unsupported limitations as

to afford the latter little weight.  <u>Brown</u>, 71 F. Supp. 2d at 31 ("[T]he resolution of conflicts in the

evidence is for the Commissioner, not the courts."); <u>see</u> <u>Ortiz v. Berryhill</u>, No. 16-584JJM, 2017

WL 6001698, at *12 (D.R.I. Nov. 9, 2017), <u>adopted</u>, 2017 WL 5992276 (D.R.I. Dec. 1, 2017)

(court may not reweigh the evidence).  When substantial evidence supports the ALJ's decision,

record evidence supportive of a different outcome is not a reason to overturn it.  <u>See</u> <u>Rodriguez</u>

<u>Pagan</u>, 819 F.2d at 3.

I find that the ALJ's treatment of the Barden opinions rests on a correct application of law to

the substantial evidence of record.  I do not recommend remand.

## V.    <u>Conclusion</u>

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the

Decision of the Commissioner (ECF No. 11) be DENIED and Defendant's Motion for an Order

Affirming the Decision of the Commissioner (ECF No. 12) be GRANTED.

Any objection to this report and recommendation must be specific and must be served

and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting

party.  <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a

timely manner constitutes waiver of the right to review by the district judge and the right to

appeal the Court's decision.  <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008);

<u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 23, 2018